STOLL, Circuit Judge,
dissenting in part.
I concur in the result reached by the majority except -with respect to the '6.10 patent. I would affirm the judgment of the district court that asserted claim 7 of the '610 patent is eligible under § 101.
The '610 patent confirms that the claimed invention “advantageously screenfs] computer data for viruses within a telephone network before communicating the computer data to an end user.” '610 patent col. 1 11. 59-61. The patent explains that this was a fundamental architectural shift from prior-art virus screening, which occurred locally on an end user’s computer rather than centrally as in the invention. Id. col. 1 11. 10-11. This shift improved the overall security of telecommunication networks by thwarting the ability of viruses to reach and exploit end users. Using the patented invention, end users could communicate over a network “without concern of receiving various predetermined computer viruses.” Id. col. 1 11. 63-64; see also Intellectual Ventures I LLC v. Symantec Corp. (Dist. Ct. Op.), 100 F.Supp.3d 371, 400 (D. Del. 2015). As IVs expert, Dr. McDaniel, testified at trial, “the key about the ■ '610[ ] is because it’s actually on a network,.... it’s out on the cloud. So that’s a big advantage, because all of thé dangerous code goes out there” and it becomes “somebody else’s problem to deal with it,” not the end users’. J.A. 800 (Trial Tr. 518 11. 9-16). Additionally, as the district court noted, the patent helped solve “the problem of individual computer users having periodically to update their virus screening software locally on their computers in order to ensure adequate protection from computer viruses.” Dist. Ct. Op., 100 F.Supp.3d at. 400; see also 610 patent col. 1 11. 20-23 (explaining that in prior art configurations “each computer user has to repeatedly upgrade the virus screening software installed on his/her computer to ensure protection from recently-discovered viruses”), Dr. McDaniel described this improvement as closing, the virus “protection gap” that existed in computer networks before the '610 patent because “as soon as Symantec knows, about a virus, you have got protection in your .e-mail immediately.” J.A. .808 (Trial Tr. 526 11. 2-7); see also id. (Trial Tr. 51811. 2-6).
I agree with the district court that the claimed invention is eligible under § 101. Dist. Ct. Op., 100 F.Supp.3d at 396-400. Analyzing claim 7 under the Mayo/Alioe framework, I accept the majority’s step-one determination that the patent is directed to the abstract idea of “virus screening.” Maj. Op.: 1319. But I depart from the majority’s analysis at-step two— the “search for an ‘inventive concept’ ” that “ ‘transform[s]’ the claimed abstract' idea into a patent-eligible application.” Alice, 134 S.Ct. at 2355, 2357 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., — U.S. -, 132 S.Ct. 1289, 1294, *1330 1298, 182 L.Ed.2d 321 (2012)). The majority gives short shrift to the Supreme Court’s instruction that in step. two we must “consider the elements of each claim both individually and ‘as an ordered combination. ’ ” Alice, 134 S.Ct. at 2355 (emphasis added) (quoting Mayo, 132 S.Ct. at 1297). The Supreme Court explained that this approach “is consistent with the general rule that patent claims‘must be considered as a whole.’ ” Alice, 134 S.Ct. at 2355 n.3 (quoting Diamond v. Diehr, 450 U.S. 175, 188, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981)) (citing Parker v. Flook, 437 U.S. 584, 594, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978)).
Claim 7 is eligible as an ordered combination. While the network components and virus screening software recited by the claim may themselves be conventional, “an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.” BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016). As described above, claim 7’s inventive concept is moving virus screening software from its typical location on end users’ computers and deploying it instead “within the telephone network” itself. '610 patent col. 14 1. 37. Thus, the invention harnesses network architecture and exploits it by. utilizing a non-conventional and non-generic arrangement of virus screening components, which improves overall network security and usability. As to this arrangement being non-conventional and non-generic, the district.court had before it IV’s expert testimony that the invention provided a novel solution to the protection gap problem and greatly reduced the likelihood of an end user receiving a virus when it, held claim 7 eligible. I also note that the jury verdict in the Symantec case—the only one of the consolidated cases that went to trial—found the '610 patent not invalid over the asserted prior art. While I recognize that validity under §§ 102 and 103 is a distinct inquiry from eligibility under § 101, and may not be dispositive of § 101, the jury verdict nonetheless supports the notion that this particular ordering of the components in claim 7 was not conventional at the time. See Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1347 (Fed. Cir. 2015) (“[PJragmatic analysis of § 101 is facilitated by considerations analogous to those of §§ 102 and 103 as applied to the particular case.”).
The claimed invention is also markedly similar to that in BASCOM, where we vacated the district court’s ineligibility determination on the basis of a step-two ordered combination. Compare '610 patent col. 111. 59-61 (“Embodiments of the present invention advantageously screen computer data for viruses within a telephone network before communicating the computer data to an end user.”), with BASCOM, 827 F.3d at 1348 (“The claims of the '606 patent are directed to filtering content on the Internet,” i.e., not on a user’s local computer). We found the abstract idea in BASCOM to be “filtering content,” BASCOM, 827 F.3d at 1348-49, similar to the abstract idea of “virus screening” in this case, Maj. Op. 1319. Unlike the majority here, this court in BASCOM recognized that although “the limitations of the claims, taken individually, recite generic computer, network and Internet components,” the patent’s “particular arrangement of elements is a technical improvement over prior art ways of filtering such content.” BASCOM, 827 F.3d at 1349, 1350. The court in BASCOM identified several concrete problems that the patent in that case addressed, much like how the patent before us addressed specific technological issues with virus screening, such as the protection gap. Thus, the court found the claims of the BASCOM patent to be *1331 “more than a drafting effort designed to monopolize the [abstract idea],” id. at 1350-51 (quoting Alice, 134 S.Ct. at 2357), because they “may be read to ‘improve an existing technological process,’ ” id. at 1351 (quoting Alice, 134 S.Ct. at 2358 (discussing claims in Diehr, 450 U.S. 175, 101 S.Ct. 1048)). There is no meaningful difference between BASCOM and this case in terms of eligibility because claim 7 also “purport[s] to improve the functioning of the computer itself,” or, at the very least, the functioning of the network. Dist. Ct. Op., 100 F.Supp.3d at 400 (quoting Alice, 134 S.Ct. at 2359); see also Oral Argument at 25:30-26:17, available at http:// oralarguments.cafc.uscourts.gov/default. aspx?fl=2015-1769.mp3 (counsel for Sym-antec acknowledging that, under Alice, a patent that improves the functioning of a network may be patent eligible under § 101).
I disagree with the majority’s characterization of this case as fitting within our line of cases rendering ineligible patents that merely “perform[ ] otherwise abstract activity on the Internet.” Maj. Op. 1319. The claims at issue in those cases, like the claims at issue in Alice, simply invoked the Internet as a means to an end; they did not improve the security and functioning of the Internet itself. Patents that fall within that paradigm are ineligible because “the focus of the[ir] claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.” Elec. Power Grp., LLC v. Alstom S.A., No. 2015-1778, 830 F.3d 1350, 1354-55, 2016 WL 4073318, at *4 (Fed. Cir. Aug. 1, 2016). In contrast, claim 7 constitutes an improvement of the network itself and, thus, focuses on improving computers as tools. See BASCOM, 827 F.3d at 1351 (describing similar patent as “not claiming the idea of filtering content simply applied to the Internet” but rather “a technology-based solution ... to filter content on the Internet that overcomes existing problems with other Internet filtering systems”). Describing claimed inventions similar to the one at issue here, we have said that we “are not persuaded that the invention’s ability to run on a general-purpose computer dooms the claims” if the claims “are directed to an improvement in the functioning of a computer.” Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1338-39 (Fed. Cir. 2016) (distinguishing collection of cases involving claims which “simply add[] conventional computer components to well-known business practices”).
For these reasons, I respectfully dissent from the majority opinion regarding the '610 patent and would affirm the judgment of the district court holding that asserted claim 7 of the '610 patent is eligible under § 101.